## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## PIKEVILLE

**CIVIL ACTION NO. 05-266-DLB**

**ALLSTATE INDEMNITY CO.**                                                          **PLAINTIFF**


**vs.**                              **MEMORANDUM OPINION & ORDER**


**FRANKLIN MOUNTS**                                                          **DEFENDANT**

********************************

        Plaintiff filed this declaratory judgment action, seeking a declaration that it is under no duty to defend or indemnify Defendant, its insured, in a pending state court action for alleged sexual assault and battery.  Jurisdiction is based upon diversity.

        This matter is presently before the Court upon Plaintiff's motion for summary judgment.  (Doc. #4).  Defendant failed to file a response.[1]  The motion is, therefore, now ripe for adjudication.

### I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

        On February 25, 2005, Opal Bailey and Bonita Hubbard filed suit against Defendant Franklin Mounts and his employer, Appalachian Regional Healthcare (ARH), in Pike Circuit Court alleging sexual assault and battery against Mounts, and negligent hiring/retention against ARH.[2]  Bailey alleges that in March 2004, she sought treatment from, and was admitted to ARH, where Mounts was employed as a chaplain.  According to Bailey, Mounts

---

[1]In fact, Defendant failed to answer or otherwise respond to Plaintiff's complaint.

[2]The complaint was also brought on behalf of an unnamed Jane Doe.  Her claim was subsequently dismissed.

1

touched her in an offensive manner while she was under the influence of medication, and sexually harassed her.  Hubbard made similar accusations against Mounts, alleging that he put his hands on her, kissed her, and touched her in an offensive manner while she was a patient at ARH from March 13-15, 2004.[3]

At the time of the events alleged by Bailey and Hubbard, Mounts was insured under a homeowner's policy issued by Plaintiff Allstate Indemnity Company.[4]  The policy provided, in pertinent part:

**Coverage X**
**Family Liability Protection**

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence[5] to which this policy applies, and is covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an insured person.  If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent.  We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

**Losses We Do Not Cover Under Coverage X:**
1.  We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of any insured person.  This exclusion applies even if: a) such insured person lacks the mental capacity to govern his or her conduct; b) such bodily injury or property damage is of a different kind or degree than

---

[3]The complaint alleges that Mounts committed the alleged acts "in the course and scope of his employment," but contains no allegation of vicarious liability.  Instead, the plaintiffs allege that ARH is directly liable for negligent hiring/retention.

[4]The subject policy (number 930086563) was in effect from July 16, 2003 to July 16, 2004.

[5]"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

2

intended or reasonably expected; or c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted or a crime ....

12.  We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person ....

The policy also imposed the following conditions on the insured:

**1.  What you Must Do After An Accidental Loss**
In the event of bodily injury or property damage, you must do the following:

    A.    Promptly notify us or our agent stating:

        1)    your name and policy number;
        2)    the date, place and the circumstances of the loss;
        3)    the name and address of anyone who might have a claim against an insured person;
        4)    the names and addresses of any witnesses.

    B.    Promptly send us any legal papers relating to the accident ....

Allstate filed the instant action seeking a declaration that the policy does not afford coverage for Mounts' alleged conduct, and that it is under no duty to defend or indemnify him in the state court action.[6]   After Mounts failed to answer or otherwise respond to Allstate's complaint, the insurer moved for summary judgment, arguing that: 1) Mounts' alleged misconduct does not constitute an "occurrence" under the terms of the policy, 2) the "intentional or criminal act" exclusion applies, 3) the "business activities" exclusion applies, and 4) Mounts failed to comply with the policy's procedures for submitting a claim.

_____

[6]This case is somewhat unique because Mounts has not requested that Allstate defend him in the state court action or indemnify him for any liability incurred as a result.  Moreover, Allstate is not a named defendant in that action.

## II. ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B.    Discussion

The dispositive issue in this case is whether the conduct attributed to Defendant by the state court plaintiffs (i.e., assault and battery) constitutes an "occurrence" as that term is defined in the homeowner's policy issued by Plaintiff. If not, then coverage is not available under the policy, and Plaintiff is under no duty to defend or indemnify Defendant. *See Thompson v. West American Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992) (noting that an insurer has a duty to defend or indemnify only if there is an allegation that potentially comes within the coverage of the policy). As noted above, *see supra* note 5, the policy in this case defines an "occurrence" as "an accident, including continuous or

4

repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." Like most other policies, there is no further elaboration of the term "accident." In the absence of express guidance, Kentucky courts interpret the term according to its common usage. *See Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986). In construing the language of a life insurance policy, the court in *Fryman* held that a death was accidental absent a showing that it was result of plan, design, or intent on the part of the decedent. *Id.* at 206.

The Supreme Court of Kentucky has stated that the term "occurrence" should be liberally construed in favor of extending coverage. The court first endorsed this approach in *James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co.*, 814 S.W.2d 273 (Ky. 1991). In that case, the Brown Foundation was ordered by the Environmental Protection Agency (EPA) to clean up one of its wood preserving treatment facilities. The Foundation, which maintained several general liability policies, attempted to recover the cleanup costs from one of its insurance companies, St. Paul. Much like Plaintiff's homeowner's policy in this case, St. Paul's general liability policy defined "occurrence" as "[a]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." *Id.* at 275.

The court noted that the nature of the insurance policy suggested an expectation of maximum coverage, and that the term "occurrence" was more expansive than the word "accident." *Id.* at 278. As for the "expected" or "intended" exception contained in the definition of "occurrence," the court determined that the insured must specifically and subjectively intend to cause injury in order for it to apply. *Id.* With regard to the issue of

5

the Foundation's state of mind, the court stated:

> Certainly the circuit judge is not absolutely prohibited from inferring on summary judgment that an insured intended or expected damage regardless of whether the objective or subjective test is used. In some cases, it is almost irrelevant whether an objective or subjective test is applied because of the circumstances.

*Id*. at 277.   While the court in *Brown Foundation* ultimately decided that the issue of whether the Foundation subjectively expected or intended the environmental damage was a matter for the jury to decide, it specifically left open the possibility that a court could infer, as a matter of law, that the party expected or intended the injury under certain circumstances.  *Id*.

The Court of Appeals of Kentucky did just that in *Thompson v. West American Ins. Co.*, 839 S.W.2d 579 (Ky. Ct. App. 1992).  In *Thompson*, two boys filed suit in Jefferson Circuit Court against the appellant, John Thompson, alleging assault and battery, intentional infliction of emotional distress, and negligence, and seeking punitive damages. *Id*. at 580.  The boys alleged that Thompson sexually molested them at his residence in Jefferson County and his cabin in Russell County.  *Id*.  Thompson, who was insured under a homeowner's policy issued by the appellee, West American, asked West American to defend the claims and indemnify him against any potential damages.  *Id*.

West American then filed suit against Thompson, seeking a declaration of rights under the policy.  *Id*.  The trial court granted summary judgment in West American's favor, finding that it had no duty to indemnify or defend Thompson in the underlying civil suit.  *Id*. On appeal, the court noted at the outset that whether sexual misconduct is an "occurrence" for purposes of insurance coverage under a homeowner's policy was a matter of first impression.  *Thompson*, 839 S.W.2d at 580.  The court concluded that, even under *Brown*

6

*Foundation's* broad interpretation of the term, sexual molestation could not conceivably qualify as an "occurrence." *Id*. at 581.  It reasoned that "sexual molestation is so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law." *Id*.  The court continued, "[t]he emotional and psychological harm caused by sexual molestation is so well recognized, and so repugnant to public policy and to our sense of decency, that to give merit to a claim that no harm was intended ... would be utterly absurd." *Id*.  Noting that there is no such thing as "negligent or reckless sexual molestation," the court concluded that the policy did not provide coverage, and, therefore, West American had no duty to defend or indemnify Thompson.[7]  *Id.*

Thompson has been extended to contexts other than sexual molestation.  For example, in *Parsley v. Kentucky Farm Bureau Mut. Ins. Co.*, 32 S.W.3d 103 (Ky. Ct. App. 2000), the court held that an insurer was not obligated to defend or provide coverage to its insured, who was convicted of complicity to commit assault and kidnaping.  Similarly, in *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809 (Ky. Ct. App. 2000), the court held that an insurer had no duty to defend or indemnify the estate of an insured, who fatally shot his own child and then committed suicide.  *See also Continental Ins. Co. v. Adams*, 438 F.3d 538 (6th Cir. 2006) (holding the same).  Finally, this Court granted summary judgment to an insurer where its insured was convicted of manslaughter.  *See*

---

[7]In doing so, the court rejected Thompson's argument that because the complaint alleged negligence, West American had a duty to defend/indemnify that claim.  The court noted that allegations in a complaint cannot compel a defense if coverage does not exist.  The court also declined to reach the issue of whether any exclusionary language in the policy applied, but suggested that it would.

*Grange Mut. Ins. Co. v. Bledsoe*, case no. 03-453-JMH (E.D. Ky. 2004).

In this case, Defendant is accused of committing two intentional torts, assault and battery. The sexual nature of Defendant's conduct, while not directed at minor children, creates another parallel between this case and *Thompson*. Therefore, based on *Thompson* and its progeny, the Court concludes that: 1) assault and battery do not qualify as "occurrences" under the subject policy, 2) coverage is unavailable, and 3) Plaintiff has no duty to defend or indemnify Defendant in the state court action. The Court also finds that the "intentional or criminal act" exclusion in the policy furnishes an alternative basis for granting summary judgment in Plaintiff's favor. In light of these conclusions, the Court need not address Plaintiff's arguments that the "business activities" exclusion applies, and that Defendant failed to comply with the policy's notice requirements.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that:

(1)     Plaintiff's motion for summary judgment (Doc. #4) be, and hereby is, **GRANTED**;

(2)     A separate Judgment will be entered concurrently herewith; and

(3)     This is a final and appealable order.

8

This 30th day of March, 2006.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\7-05-266-MSJOpinion.wpd